**In the United States District Court
for the District of Kansas**

———————

Case No. 2:19-cv-02725-TC

———————

WILLIAM DONAHUE,

*Plaintiff*

v.

UNITED PARCEL SERVICE, INC.,

*Defendant*

———————

**MEMORANDUM AND ORDER**

After a four-day trial in June 2022, a jury returned a verdict for Defendant UPS. Plaintiff William Donahue filed a motion for new trial, claiming the jury instructions were procedurally and substantively improper. Doc. 135. For the following reasons, Donahue's motion is denied.

**I**

**A**

William Donahue filed this action against his former employer, United Parcel Service, Inc., asserting a variety of employment-related claims. Doc. 62; *see also* Doc. 80 (granting in part and denying in part UPS's motion for summary judgment). Beginning on June 7, 2022, the parties tried the case to a jury. On June 10, 2022, the jury found in favor of UPS on all four counts. Doc. 130-1.

Donahue has filed a motion for new trial. Doc. 135. While he "believes there were a number of errors before and during the trial," he "is limiting his Motion for New Trial to the final jury instructions." *Id.* at 1. His contentions are focused on the procedures used to arrive at

1

the final instructions and the substance of the instructions that were given. *Id.* at 3–11.

**B**

A court may "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). Trial courts have broad discretion in deciding whether to grant a motion for new trial. *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984). A recent Tenth Circuit panel observed that such motions should be denied "unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Nosewicz v. Janosko*, 857 Fed. App'x 465, 468 (10th Cir. 2021) (quoting 11 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2803 (3d ed. Apr. 2022 update)); *accord Henning v. Union Pacific R. Co.*, 530 F.3d 1206, 1217 (10th Cir. 2008) (citing Fed. R. Civ. P. 61).

Donahue's motion is focused on the jury instructions. As to process, the Federal Rules of Civil Procedure establish a simple, fair procedure for instructing the jury in civil cases and preserving any claimed errors. *See generally* 9C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2551 (3d ed. April 2022 update). "At the close of evidence or at any earlier reasonable time that the court orders, a party may file and furnish to every other party written requests for the jury instructions it wants the court to give." Fed. R. Civ. P. 51(a)(1). A court then "inform[s] the parties of its proposed instructions and proposed action on the requests before instructing the jury and before final jury arguments." *Id.* at 51(b)(1). Before giving the instructions to the jury, the court must then "give the parties an opportunity to object on the record and out of the jury's hearing." *Id.* at 51(b)(2). A party who objects to an instruction or omission "must do so on the record, stating distinctly the matter objected to and the grounds for objection." *Id.* at 51(c)(1). If a party properly objects, they may assign as error an instruction actually given or a failure to give an instruction. *Id.* at 51(d)(1). But when the objecting party does not preserve an error, the challenged instruction will only be reviewed for plain error. *Id.* at 51(d)(2).

The substance of instructions is viewed differently. Generally, the role of a district court is to draft jury instructions that accurately state the substantive law. *Martinez v. Caterpillar, Inc.*, 572 F.3d 1129, 1132

(10th Cir. 2009). If a party challenges the instructions later, the focus is on the instructions as a whole and whether they correctly state the governing law. *United States v. Cortez-Nieto*, 43 F.4th 1034, 1041 (10th Cir. 2022). The controlling question is whether the instructions misled the jury in any way and whether the jury sufficiently understood the legal issues presented and its duty to decide those issues. *Harte v. Bd. of Comm'rs*, 940 F.3d 498, 525 (10th Cir. 2019).

## II

Donahue's motion for a new trial is denied. He has not established that any of the procedural or substantive concerns—either individually or collectively—prejudiced his substantial rights or adversely affected the essential fairness of the trial.

### A

Donahue makes several procedural arguments as to the jury instructions. Among them are complaints that the instructions were overly complicated and long, the time limit for closing arguments was too short, and the requirement that written objections be submitted by 9:00 AM on June 8, 2022 was too rigid. Doc. 135 at 3–4.

Rule 51 requires a party to object to the jury instructions or to "improper procedures used by the court" to preserve errors. *Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1289 (10th Cir. 1999). The procedural conduct of a trial, including managing closing arguments, is entrusted to the discretion of the trial court. *Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 943 (10th Cir. 1994) (citing *Carlin v. Stringer*, 365 F.2d 597, 599 (10th Cir. 1966)).

Donahue has not established any prejudicial error as to the process employed for the instructions conference or the time provided for closing arguments. The parties received the preliminary proposed jury instructions on June 6. Doc. 120. They were then required to submit written objections to those instructions by June 8, Doc. 118, and both complied, Docs. 122 & 123. Some preliminary rulings on the written objections were made on June 9 during an initial instructions conference, but other matters remained unresolved because the testimony had not yet concluded. Once both parties rested and following a final instruction conference on June 10, the parties were provided both the final jury instructions and a redlined version to show how the rulings were being implemented. Docs. 126 & 127. Donahue has not shown

3

how this process prejudiced his substantial rights or affected the essential fairness of the trial. *See generally Thompson*, 34 F.3d at 943 (rejecting the argument that a 20-minute limit for closing arguments was prejudicial in a 4-day trial with several witnesses and exhibits presented).

**B**

Donahue also argues that the jury instructions were substantively wrong. Among his complaints are that instructions were given in error, terms were not defined, and UPS's contentions should not have been included.

**1.** Donahue claims Instructions Number 3, 4, 6 and 7 are substantively wrong. He contends that they "erroneously raised [his] burden of proof from 'preponderance of the evidence' to 'clear and convincing'" for his workers' compensation retaliation claim contrary to *Ortega v. IBP, Inc.*, 874 P.2d 1188, 1189 (Kan. 1994), and ignored the parties' jointly proposed instructions that relied on the *Ortega* standard, Doc. 135 at 4–7. Neither argument warrants relief.

To begin with, Instructions 3, 4, 6, and 7 correctly reflect Kansas substantive law because *Ortega* has been overruled. In *Ortega*, the Kansas Supreme Court held "that clear and convincing evidence is not a quantum of proof but, rather, a quality of proof," meaning that the plaintiff need only "establish that claim by a preponderance of the evidence, but the evidence must be clear and convincing in nature." *Id.* at 1189. But, in *In re B.D.-Y.*, 187 P.3d 594, 691 (Kan. 2008), the Kansas Supreme Court rejected the quantum-of-proof formulation, holding instead that the clear and convincing standard is satisfied if "the factfinder believes that the truth of the facts asserted is highly probable." *Id.* at 697. This new formulation applied to "all cases requiring the factfinder to make a determination based upon clear and convincing evidence," and the Court expressly held that all "contrary holdings of this court are disapproved, and the Kansas pattern jury instruction(s) on this issue will require modification." *Id.* at 698 (identifying *Ortega* as one of those disapproved decisions). In other words, the substantive law in Kansas has changed and now requires courts to apply the definition of clear and convincing evidence described in *In re B.D.-Y. See Gebhardt v. Exide Techs.*, 521 F. App'x 653, 656 (10th Cir. 2013) (applying *In re B.D.-Y.*); *Grabbe v. Quest Diagnostics, Inc.*, No. 08-2281, 2010 WL 11627479, at *18 n.127 (D. Kan. May 14, 2010) (recognizing *In B.D.-Y.* overruled

*Ortega*'s formulation of the clear and convincing standard).[1] Instructions 3, 4, 6, and 7 comport with *In re B.D.-Y.*'s formulation of Kansas law.

And it matters not that the parties requested an instruction at odds with the governing law. Trial courts have an "inescapable duty to fully and correctly instruct the jury on the applicable law of the case, and to guide, direct and assist them toward an intelligent understanding of the legal and factual issues involved in their search for truth." *Tyler v. Dowell, Inc.*, 274 F.2d 890, 897 (10th Cir. 1960); *accord Chavez v. Sears, Roebuck & Co.*, 525 F.2d 827, 830 (10th Cir. 1975). Fidelity to that duty prohibits delivering a proposed instruction that relied on an invalid formulation of substantive law. *Chavez*, 525 F.2d at 830; *see also* 9C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2552 nn. 20 & 21 (3d ed. April 2022 update) (collecting cases).

**2.** Donahue also asserts that he is entitled to a new trial because Jury Instruction Number 20 was given in error. Doc. 135 at 20. That instruction informed the jury that Donahue could not recover any damages for his work-related injury because he had already been compensated for it, but that he could recover damages directly related to his termination by UPS. Doc. 127 at 23. According to Donahue, the instruction implied to the jury that "Plaintiff's retaliatory discharge claim had been resolved." Doc. 135 at 8.

There are at least three flaws with this argument. First, the instruction provided correctly states Kansas law. In *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1300 (10th Cir. 1998), the Tenth Circuit rejected an argument claiming that a substantially similar instruction was an improper statement of the law.

---

[1] *Jones v. United Parcel Service, Inc.*, 674 F.3d 1187 (10th Cir. 2012), does not suggest (much less compel) a different result. *Contra* Doc. 135 at 7. The burden of proof was not at issue in *Jones*. Rather, the Tenth Circuit approved a group of instructions that described the mechanics of shifting burdens, holding that they properly informed the jury that the plaintiff had the initial burden of establishing a prima facie case of retaliation, but if the plaintiff carried that burden, the defendant then had to establish a non-retaliatory reason for the termination. *See* 674 F.3d at 1199. Until *Gebhardt*, the Tenth Circuit did not consider the proper formulation of the burden of proof under Kansas law. 521 F. App'x at 656 (applying *In re B.D.-Y.*).

5

Second, neither Jury Instruction Number 20 nor the instructions as a whole suggested that Donahue's retaliatory discharge claim had been resolved. To the contrary, Instruction No. 20, combined with the other instructions defining Donahue's Kansas Workers' Compensation retaliation claim, made clear that he was seeking damages not for the underlying injury but because he believed UPS terminated him in retaliation for suffering an injury that may give rise to a workers' compensation claim. Doc. 127 at 4 (explaining that Donahue asserted he was unlawfully discharged for sustaining an injury for which he might seek workers' compensation benefits); *id.* at 9 (explaining the elements of his retaliatory discharge claim); *id.* at 20–21 (explaining the basis for calculating his damages); *id.* at 22 (explaining how to calculate damages for non-economic injuries). Donahue does not (and cannot) establish that these instructions, taken together, incorrectly informed the jury of the substantive law and the nature of his claim.

Third, any disagreement with Instruction 20 is academic. The verdict form contained a specific question as to liability on this claim: the jurors expressly concluded that UPS had not terminated Donahue in retaliation for sustaining a workplace injury that could give rise to a workers' compensation claim. Doc. 130 at 2. So even if Instruction Number 20 might be read as Donahue suggests, the jurors did not read it in that way. Instead, they concluded he failed to establish his claim. Their conclusion rejects Donahue's objection.

**3.** Donahue next asserts that he is entitled to a new trial because the Court failed to define necessary terms, including "protected activity" and "adverse action." Doc. 135 at 8–9 (referring to Instructions 9 and 15). Donahue did not distinctly object to either instruction for the reasons he now asserts. Fed. R. Civ. P. 51(c)(1). Instead, he suggested that a synonym of termination be used and that the instruction defined but did not label protected activity. As a result, the instructions will be reviewed only for "plain error." *United States v. Piette*, __ F.4th __, 2022 WL 3452464, at *13 (10th Cir. 2022). To prevail on a plain error claim, Donahue must show that the legal error was plain, affected his substantial rights, and seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.* (describing how Tenth Circuit precedent defines plain error analysis); *see also Osterhout v. Board of County Comm'rs of LeFlore County*, 10 F.4th 978, 1000–01 (10th Cir. 2021) (applying plain error analysis to challenge on instruction for compensatory damages).

Donahue's argument does not merit relief. First, he does not urge plain error could be satisfied here. That alone warrants rejection of his argument. *See generally United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019) (treating arguments that do not assert plain error as waived); *cf. also Lancaster v. Independent Sch. Dist. No. 5*, 149 F.3d 1228, 1235 n.2 (10th Cir. 1998) (recognizing the obligation to support all arguments being made). Second, these two instructions almost exactly mirrored the parties' jointly proposed instructions. The final instructions adopted the parties' definition of protected activity, Doc. 115 at 23; Doc. 127 at 17, and of termination as the adverse event, Doc. 115 at 4 & 23; Doc. 127 at 9 & 17. Third, the instructions accurately state the substantive law. *See generally* Doc. 126 at 16–17, 25–26 (identifying the pattern instructions on which the final instructions were based). Indeed, Donahue offers no legal authority for his position to the contrary. *See Phillips v. Calhoun*, 956 F.2d 949, 953–54 (10th Cir. 1992) (noting that a litigant must support a contention with pertinent legal authority). Finally, these two instructions caused no confusion. The jury found that UPS terminated Donahue (engaged in adverse action) and that he had sought an accommodation (engaged in a protected activity) from UPS. Doc. 130-1 at 1, 2. His claim failed, however, because the jury found that the reason for termination was not motivated by any unlawful purpose.

**4.** Donahue next asserts that the instructions should not have mentioned UPS's legitimate, non-discriminatory reason for firing Donahue. Doc. 135 at 9 (explaining his view of UPS's factual contentions as they relate to Instructions 3, 9, and 15); *see also id.* at 10 (noting UPS "steadfastly claimed that it never terminated Donahue"). It does not appear that Donahue raised this particular objection. But even if he had, it would not matter: UPS has repeatedly taken the position that its treatment of Donahue was based in part on his performance issues (regardless of whether it was described as a termination or disqualification), Doc. 80 at 3–5, and the jury concluded that his termination was not unlawful under any of Donahue's theories, Doc. 130. Donahue has no factual or legal basis for obtaining a new trial on this ground.

**5.** Donahue also asserts it was error to give a business judgment instruction because this defense was not preserved in the Pretrial Order, the instruction was substantively inaccurate, and there was no credible evidence that UPS made any business judgements regarding Donahue. Doc. 135 at 10-11. These arguments do not warrant relief.

7

Donahue has failed to identify any authority suggesting that a litigant must use the magic words "business judgment" in the Pretrial Order to preserve requesting such an instruction, especially where, as here, UPS expressly asserted that its defenses were that it had legitimate non-retaliatory reasons for terminating employment and that Donahue lacked evidence to demonstrate pretext. Doc. 62 at ¶¶ 4.b.15 & 16. Moreover, this instruction conforms with prevailing law. *Bacy v. Chickasaw Nation Indus., Inc.*, 854 F. App'x 944, 947 (10th Cir. 2021). And finally, the jury rejected Donahue's argument that UPS lacked a legitimate reason for terminating him. Doc. 130.

### III

For the foregoing reasons, Donahue's motion for a new trial, Doc. 135, is DENIED.

It is so ordered.

Date: September 2, 2022         s/ Toby Crouse
                                Toby Crouse
                                United States District Judge